## D. & W. FUSE CO. v. CHASE-SHAWMUT CO.

(Circuit Court of Appeals, First Circuit. April 6, 1910.)

### No. 828.

PATENTS (§ 328*)—INVENTION—ELECTRIC FUSE.

The Downes patent, No. 640,371, for an electric fuse or cut-out, claim 1, which covers broadly a multiple-link inclosed filled fuse, is void for lack of invention, in view of the prior art, which disclosed multiple-link open fuses, multiple-link inclosed fuses, and single-link inclosed filled fuses; the changing of the latter to a multiple-link fuse being an obvious improvement to one skilled in the art.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the D. & W. Fuse Company against the Chase-Shawmut Company. Decree for defendant, and complainant appeals. Affirmed.

J. Edgar Bull, for appellant.
Guy Cunningham, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. The subject-matter of this appeal is the Downes patent, No. 640,371, dated January 2, 1900, for an "improvement in electric fuses or cut-outs." The patent is for a multiple-link inclosed filled fuse; and the defense is that there was no invention in

making an inclosed filled fuse with multiple links, in view of the fact that multiple-link open fuses, multiple-link inclosed fuses, and single-link inclosed filled fuses were old in the art.

The claim in issue reads as follows:

"1. In an electric fuse or cut-out, the combination with an inclosing sheath, and terminals on said sheath, of a fuse-link within the sheath consisting of a plurality of fusible wires or conductors connected in parallel between said terminals, and a filling of suitable porous or similar material within the sheath about said fusible wires, providing a multitude of interstices or passages for disintegrating or breaking up and conducting away the metallic vapor or gas evolved by the fusing of the wires."

This claim covers broadly a plurality of parallel links or wires distributed generally in the filling of an inclosed fuse, thereby "providing a multitude of interstices or passages for disintegrating or breaking up and conducting away the metallic vapor or gas evolved by the fusing of the wires."

It being admitted that the prior art discloses multiple-link open fuses and multiple-link inclosed fuses and single-link inclosed filled fuses, the question presented is whether there was any invention in inserting in an inclosed filled fuse two or more wires in place of one, so distributed that the filling should surround each wire.

Upon this issue of invention the complainant contends that Downes made the important discovery that the distribution of metal in the form of two or more wires, as distinguished from one wire, in the filling of an inclosed fuse, will prevent explosions in large fuses when "subjected to a severe overcharge of current," and that this result was not obvious, either from the construction or mode of operation of the old multiple-link open fuse or the old multiple-link inclosed fuse or the old single-link inclosed filled fuse.

On the other hand, the defendant contends that it did not involve invention to add another link, or several links, to the prior single-link inclosed filled fuse, especially in view of the fact that multiple-links were common in open and inclosed fuses; that the Downes fuse discloses nothing novel, either in its construction or mode of operation; and, further, that the prior Mordey patent for an inclosed filled fuse suggested the use of a plurality of wires.

The Downes patent contains a full and clear statement of the object of his invention, the change which he made in the prior single-link inclosed filled fuse, and the results which followed from this change:

"In my patent No. 569,373, dated October 13, 1896, I have shown and described a fuse which, as has been practically demonstrated, successfully and satisfactorily meets all of the requirements of ordinary usage. It has been found, however, that in fuses above certain sizes, particularly those adapted to carry heavy currents without blowing, trouble is frequently caused when said fuses are subjected to a severe overcharge of current, owing to the fact that the volume of metal volatilized by the action of the current and requiring dissipation was so great that there was apt to be a severe explosion, due to the sudden expansion of the comparatively large volume of metallic vapor. Several ways have been tried with a view to overcoming this difficulty, among them being the use of an alloy of high conductivity, by which means the cross-section of the link would be materially reduced; but it has been found that all alloys of high conductivity—such as alloys of tin, copper, and the like —whatever the bulk of the metal, vaporize with what may be called 'explo-

sive action, whereas metals of less conductivity, such as lead or lead alloys, can within certain limits as to bulk be transformed from metal to vapor instantly without any great disturbance under suitable conditions; but in fuses of large capacity a single fuse-link of lead or lead alloy must necessarily be of large cross-sectional area, and therefore of considerable bulk, and is therefore apt to vaporize with an explosive action for the reasons above set forth.

"In accordance with my present invention, I obviate the difficulties above referred to by employing, instead of a single wire fuse-link of large sectional area or bulk, a fuse-link composed of a plurality of wires or metallic bodies connected in parallel or multiple arc. By such construction several advantageous results of major importance are secured, the first being an actual reduction of the total cross-sectional area involved—that is to say, the sum of the cross-sectional areas of, say, two, three, or five small wires is less than the cross-sectional area of one large wire necessary to carry a given amount of current. This is due to the fact that the total surface area of five small wires is much greater than that of a single large wire, with the result that it possesses greater ability to radiate the heat occasioned by the passage of the current. A second result is that, the metal being already separated into smaller divisions, there is greater opportunity, when the metal is volatilized by the passage of an excessive current, for the gases thus evolved to expand and diffuse themselves in the filling surrounding the fuse-link. It thus becomes possible to handle with fuses of comparatively small dimensions, particularly as to diameter, but having large current-carrying capacity, severe discharges without trouble or disturbance of any kind. * * *

"d is a filling of a suitable material preferably in a finely divided state (such as slaked lime), the principal function of which is to provide a multitude of minute paths or interstices for the escape of the vapor or gas evolved upon the volatilization of the fuse-link by an excessive current."

This extract from the patent may be summarized as follows:

Downes found that the inclosed single-link filled fuse of the Mordey type, as illustrated in his prior 1896 patent, did not prevent severe explosions in large fuses adapted to carry heavy currents, when subjected to a severe overcharge of current, owing to the quantity of metal vaporized and requiring dissipation. It had been sought to overcome this difficulty in two ways—by the use of an alloy of high conductivity, such as copper, by which means the cross-section of the link would be materially reduced; and by the use of a metal of low conductivity, such as lead. The objection to the use of a metal of high conductivity was that, whatever the bulk of the metal, it vaporizes with an explosive action; and the objection to the use of a metal of low conductivity was that it requires a considerable bulk, with a large cross-sectional area, and is therefore likely to vaporize with an explosive action. In his present invention Downes obviates these difficulties by employing, instead of a single wire fuse of large sectional area or bulk, a fuse link composed of a plurality of parallel wires.

The important advantages secured by this construction are two: First, an actual reduction of the total cross-sectional area or bulk of the fuse, since the cross-sectional area of two, three, or five small wires is less than that of one large wire necessary to carry a given amount of current. This is due to the fact that the total surface area of five small wires is much greater than that of a single large wire, with the result that it possesses greater ability to radiate the heat caused by the passage of the current. A second result is that, the metal being already separated into smaller divisions, there is greater opportunity when the metal is volatilized by the passage of an excessive current for the gases

evolved to expand and diffuse themselves in the filling surrounding the fuse link.

From this review of his patent it appears that Downes' main idea was the reduction in the amount of metal in fuses of large carrying capacity, and that he secured this result by the employment of several small wires in place of one large wire capable of carrying a given amount of current. It is not, however, seriously contended that there was anything novel in this feature of the Downes patent; in fact, the complainant's counsel admit in their brief that the patentable novelty of claim 1 cannot rest on this reduction of metal. And if it were contended that this was new, the record abundantly proves that it was well known in the fuse art before the date of the Downes invention that the quantity of metal in a fuse of a given capacity might be reduced by the use of two or more small wires in place of one large wire.

If, therefore, Downes made an invention, it must rest upon the second feature of his patent, namely, that in case two or more wires are distributed throughout the filling there is greater opportunity when the metal is volatilized by an excessive current for the gases to expand and diffuse themselves in the surrounding filling.

In considering this feature of the Downes patent, it is important to remember that the action of the filling in an inclosed fuse was well known.

Mordey was the inventor of the inclosed filled fuse, and in his English patent of 1890 he thus describes the action of the filling:

"The action of this improved fuse is as follows: The passage of an excessive current causes the conductor to be volatilized; the metal being deposited in a finely divided condition amongst the particles of the surrounding nonconducting material. So complete is the dissipation of the metal that it is frequently difficult to find any trace of it after the conductor has been fused."

This same action is also described in the later McCulloch patent of December 3, 1895:

"By my invention, when the fuse explodes the gases and vapors are allowed instantly to escape laterally through the surrounding porous material. The pressure being thus relieved, there is but little melting of the fuse longitudinally, and, furthermore, by reason of the fact that the vapors or gases are caused to pass through the various interstices of the surrounding porous material, the electrical continuity of the said gases or vapors is broken."

A like action of the filling is described in Downes' prior patent of October 13, 1896, which is referred to in the patent in suit:

"The space within the exterior sheath and about the drum inclosing the air-space is filled by a finely-divided material, the office of which, in a properly-constructed cut-out, is to provide a multitude of minute paths for the escape of the vapor or gases produced at the rupture of the circuit, preventing the formation of a continuous strata of the same, which from the fact that it possesses a fairly good conductivity would maintain an arc."

Since, then, at the date of the Downes patent in suit, it was well known in this type of fuse that the finely divided or porous filling afforded a multitude of interstices through which the volatilized metal would be broken up and dissipated, there could, in our opinion, be no invention in the discovery that two or more wires, instead of a single wire, would afford "a greater opportunity * * * for the gases

thus evolved to expand and diffuse themselves in the filling surrounding the fuse link," as Downes says in his specification, or that the filling would provide "a multitude of interstices or passages for disintegrating or breaking up and conducting away the metallic vapor or gas evolved by the fusing of the wires," as he says in claim 1.

Upon full consideration, we cannot escape the conclusion that it would have occurred, to any one skilled in the fuse art and possessing a knowledge of the action in the filling of an inclosed fuse, that the distribution in the filling of two or more wires would be better than one; in other words, that the greater the wire surface exposed to the filling the better would be the result. Stated in another way, it would seem obvious that, if one wire afforded an opportunity for the gases to expand and diffuse themselves in the filling, two or more wires would afford a "greater opportunity;" and this is the essence of the Downes discovery.

It must be borne in mind that the complainant is not seeking to establish the validity of a narrow claim for a particular mechanical form of fuse, but is relying upon a broad claim covering two or more wires distributed in an inclosed fuse, as set forth in claim 1. For the reasons already stated, we do not think this broad claim can be upheld on the theory that Downes made an important discovery in the fuse art.

The decree of the Circuit Court is affirmed, and the appellee recovers its cost of appeal.